# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., | ) | C.A. No. 4:04-21962-25 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | WRITTEN OPINION AND ORDER |
| | ) | |
| AON RISK SERVICES, INC. OF NEW YORK AND AON CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **INTRODUCTION**

Plaintiff Nelson, Mullins, Riley & Scarborough, L.L.P ("the plaintiff") filed the instant legal action in state court on July 21, 2004, seeking damages against defendants Aon Risk Services, Inc. of New York ("Aon Risk") and Aon Corporation ("Aon Corp.") for the alleged breach of fiduciary duty, professional negligence, negligent misrepresentation, fraud, unjust enrichment, breach of implied contract, civil conspiracy, and unfair trade practices relating to the procurement of professional liability insurance coverage for plaintiff from Reliance Insurance Company ("Reliance"). Thereafter, Aon Risk, with the consent of Aon Corp., removed the instant action to federal court.

This matter now comes before the undersigned upon the filing of defendant Aon Corp.'s motion to dismiss for lack of personal jurisdiction and to quash service of the summons and complaint upon them. In particular, Aon Corp. alleges that the plaintiff cannot show that it had sufficient contacts with either the plaintiff or the State of South Carolina to permit this Court's

1

exercise of personal jurisdiction over it. The plaintiff opposes Aon Corp.'s motion to dismiss. According to the plaintiff:

> ...the defendant [Aon Corporation] is subject to the jurisdiction of this Court through its acts in this state relating to this cause of action, or, alternatively, through those of its subsidiary and agent, Aon Risk Services of New York.

> (Plaintiff Memo. p. 1).

Also presently pending before the Court is Aon Risk's motion to dismiss the plaintiff's complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. In particular, Aon Risk alleges that the plaintiff's complaint fails to state a claim for which relief can be granted, because: (1) the plaintiff's claims are time-barred; (2) the law does not impose any duty upon Aon Risk to continually monitor the financial condition of insurers; (3) South Carolina insurance law exclusively requires the South Carolina Department of Insurance to oversee the financial condition of the insurers it regulates; and (4) the plaintiff's claims for fraud, civil conspiracy, and violations of the South Carolina Unfair Trade Practice Act are insufficiently pled and/or not legally viable. The plaintiff opposes Aon Risk's motion to dismiss. According to the plaintiff, its claims were timely and properly pled. As well, the plaintiff argues that Aon Risk owed it a fiduciary duty to exercise due care in the placing of insurance.

On June 14, 2005, a hearing was held before the undersigned relating to all pending motions. At that time, all parties were given the opportunity to present their respective legal positions. The parties appeared, through legal counsel, at the hearing and presented argument relating to their respective legal positions. The undersigned has carefully considered the briefs, pleadings, argument of counsel, and relevant case law. All pending motions to dismiss are now ripe for disposition and shall be addressed separately herein.

2

## FACTS

_____As alleged in the plaintiff's complaint, the plaintiff is a limited liability partnership engaged in the practice of law. Aon Risk is an insurance brokerage company and a subsidiary of Aon. Corp. In the plaintiff's complaint, both Aon Corp. and Aon Risk are collectively referred to as "Aon." This rendition of the facts shall also refer to the defendants collectively as "Aon."

During the relevant time periods, Aon served as the plaintiff's professional liability insurance broker. According to the plaintiff, based upon the defendants' representations and misrepresentations, it purchased liability insurance coverage from Reliance Insurance Company during the years 1997-2000. In particular, the plaintiff alleges, in part, that:

8.      Commencing with its initial appointment as insurance broker for plaintiff, Aon represented to plaintiff that it possessed specialized expertise in the area of professional liability coverage. Aon further represented that it possessed specialized knowledge and expertise to monitor the financial condition of professional liability insurers.

9.      In fact Aon represented to plaintiff that it employed a unique division within the entity whose sole purpose was to monitor the financial condition of the professional liability insurers procured on plaintiff's behalf and that it would notify plaintiff about any adverse changes in the insurer's financial capacity.

10.     Aon further represented to plaintiff that it would employ its expertise and advice not only to notify plaintiff of any adverse changes in the financial condition of any applicable insurer, but also to provide professional advice concerning the continuing relationship with such insurer, and that it would provide suitable replacement coverage for plaintiff.

•••

12.     Aon repeatedly assured plaintiff of Reliance's continued viability and reiterated its commitment to Reliance in advising plaintiff not to transfer its professional liability coverage to another provider.

•••

3

49.     Aon made numerous representations to plaintiff regarding its expertise to provide insurance brokerage services, including, but not limited to the following: (1) representations to the plaintiff that Reliance was in sound financial condition and able to provide reliable insurance coverage for plaintiff and that the plaintiff was adequately protected from professional negligence claims by the professional liability insurance that plaintiff purchased from Reliance; (2) representations that it was a licensed, professional broker in South Carolina and that it was qualified to render independent advice, recommendations and other services in South Carolina; and (3) representations that it would independently provide services to plaintiff free of conflicts of interest.

According to the plaintiff, these alleged representations were false.

Thereafter, Reliance was declared insolvent and the plaintiff was forced to pay a malpractice claim with its own funds. The instant lawsuit followed.

## ANALYSIS

## I. Aon Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction

Aon Corp. has moved to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction. Esab Group, Inc. v. Centricut, LLC, 34 F. Supp.2d 323 (D.S.C. 1999) (citing Combs v. Bakker, 886 F.2d 673 (4th Cir. 1989) and Sheppard v. Jacksonville Marine Supply, Inc., 877 F. Supp. 260 (D.S.C.1995)). However, notwithstanding the fact that the burden of establishing jurisdiction is upon the party seeking to invoke the jurisdiction, at the pre-trial stage of the proceedings, the plaintiff need only make a prima facie showing by pleadings and affidavits. Hammonds v. Butler, Means, Evins & Brown, 300 S.C. 458, 388 S.E.2d 796 (1990). In considering a challenge on such a record, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the

existence of jurisdiction." Esab Group, Inc., 34 F. Supp.2d at 329 (citing Combs, 886 F.2d at 676).

_____ In the instant action, the plaintiff does not allege the existence of general jurisdiction in this case. (Plaintiff Memo. p. 12). Instead, the plaintiff argues that personal jurisdiction over Aon Corp. exists as a result of "its acts in this state relating to [the plaintiff's] cause[s] of action, or alternatively through those of its subsidiary and agent, Aon Risk Services of New York." (Plaintiff Memo. p. 1). Conversely, Aon Corp. argues that the plaintiff cannot show that it had sufficient contacts with either the plaintiff or the State of South Carolina to permit this Court's exercise of personal jurisdiction over it. In support thereof, Aon Corp. has submitted the affidavits of Robert Rivkin and Tom Appling.

Evaluating the propriety of asserting personal jurisdiction over a nonresident defendant is generally a two-step process. Esab Group, Inc., 34 F. Supp.2d at 329 (citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998)). First, the court must determine whether the forum state's long-arm statute provides a basis for exercising jurisdiction. Id. Second, the court must consider whether assertion of personal jurisdiction comports with the constitutional requirements of due process. Id. In South Carolina, the long-arm statute has been interpreted to be coextensive with the constitutional limits of the Due Process Clause. Id. (citing Southern Plastics Co. v. Southern Commerce Bank, 310 S.C. 256, 423 S.E.2d 128 (1992)). Consequently, the two-step inquiry compresses into one: whether the due process requirements are met. Id. (citing Sonoco Prods. Co. v. Inteplast Corp., 867 F. Supp. 352 (D.S.C.1994)).

Specific jurisdiction requires that the out of state defendant engage in some activity purposely aimed toward the forum state and that the cause of action arise directly from that activity. Id. In some instances, even a single contact by a nonresident defendant may, if sufficiently purposeful in its aim,

support a constitutional exercise of specific jurisdiction with respect to a claim arising from that contact. Id. (citing Red Wing Shoe, 148 F.3d at 1359). However, unsolicited contacts, random or fortuitous acts, or the unilateral acts of others, including the plaintiff, do not constitute such a purposeful connection between the defendant and the forum state. Id.

_____As noted, this Court must initially determine whether the state of South Carolina's long-arm statute provides a basis for exercising jurisdiction over Aon Corp. In this regard, the plaintiff contends that because Aon Corp. and Aon Risk are essentially the same entity, personal jurisdiction over Aon Corp. is appropriate. (Plaintiff Memo. p. 6). As well, the plaintiff asserts that because Aon Risk acted as Aon Corp.'s agent, personal jurisdiction would also be proper. (Plaintiff Memo. p. 6). In sum, the plaintiff argues that this Court possesses personal jurisdiction over Aon Corp. in this case.  (Plaintiff Memo. p. 6).

In support of its contention that jurisdiction over Aon Corp. exists, the plaintiff has submitted to the Court an affidavit from attorney James C. Gray, Jr., a partner in the plaintiff's law firm. In this affidavit, Mr. Gray indicates that:

3)      ...he has personal knowledge of the relationship between Nelson Mullins and Aon, Corp. and its subsidiaries by virtue of his service on the Executive Committee and service as Managing Partner.

4)      The relationship between Nelson Mullins and Aon and its subsidiaries arose when Aon, Corp. acquired Minet, an insurance brokerage with a previous relationship with Nelson Mullins.

5)      At the time of the acquisition of Minet by Aon, Corp. former Minet broker Tom Appling became employed by Aon Risk Services, an Aon, Corp. subsidiary.

6)      Appling represented that Nelson Mullins would enjoy the benefit of the broad array of services available from Aon, Corp. and its subsidiaries, services well beyond what Minet could offer.

7)      Minet's services to Nelson Mullins had been limited to professional liability coverages through broker Tom Appling. Subsequent to the acquisition of Minet by Aon, Inc. the services provided by Aon, Corp. and its subsidiaries expanded and Nelson Mullins was introduced to another broker, Doug Cherry, who became involved in the Nelson Mullins account.

8)      Coverages placed through Aon, Inc. and its subsidiaries grew to include, professional liability, employment practices liability, and non-owned aircraft liability coverages.

9)      Doug Cherry, on information and belief, was a Vice President of the Professional Services Group of Aon, Corp.

10)     Tom Appling represented that Aon, Corp. had a "special unit" that concerned itself with the financial condition and solvency risks of insurance carriers for the purpose of protecting Aon and its customers and that Nelson Mullins would be the beneficiary of that service.

11)     Both Appling and Cherry were located in the Aon facilities in the World Trade Center.

12)     Communications occurred routinely by phone, letter and visits. Appling visited the South Carolina offices of Nelson Mullins on multiple occasions.

13)     Appling and Cherry also routinely traveled to attorney meetings and forums, also attended by Nelson Mullins, where Appling and Cherry marketed Aon services to the law profession.

14)     Throughout the relationship with Aon, Appling and Cherry worked as a team. There were multiple telephone conferences where both Cherry and Appling were part of the same telephone conference.

15)     Appling would frequently report that he had consulted with Cherry on specific issues.

16)     In dealings with Aon, Aon Corp. was indistinguishable from Aon Risk Services. The Aon brokers, Cherry and Appling made no distinction, always referring to the services of "Aon."

(Gray Aff. ¶'s 3-16).

The plaintiff also asserts that because the defendants have the same legal counsel and use the same trademarks, this is further evidence of the close relationship between them. Likewise, a review of the plaintiff's complaint in this case further shows that the plaintiff collectively refers to the defendants as "Aon"and refers to them as being a single entity. Again, according to Gray, this is because Aon Corp. was indistinguishable from Aon Risk. (Gray ¶ 16).

Based upon the undersigned's review of the factual allegations set forth above, construing all relevant pleadings and allegations in the light most favorable to the plaintiff, assuming the credibility of the Gray affidavit, and drawing the most favorable inferences for the existence of jurisdiction, as is legally required, this Court concludes that this Court possesses a basis for personal jurisdiction over Aon Corp.

In particular, S.C. Code Ann. § 36-2-803 (commonly referred to as "the South Carolina Long-Arm Statute") provides that:

> (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
>
> (a) transacting any business in this state;
>
> (b) contracting to supply services or things in the State;
>
> (c) communications of a tortious act in whole or in part in this State...

Hence, there are sufficient allegations in the record upon which it can be concluded, at this time, that the defendants acted collectively as one legal entity or that Aon Risk, its agents or employees, acted as an agent of Aon Corp. These allegations are sufficient to establish a basis for jurisdiction over Aon Corp. at this time. Again, pursuant to South Carolina's long-arm statute, a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising

from the person's transacting any business in this state.

Next, the Court must consider whether the assertion of personal jurisdiction also comports with the constitutional requirements of due process. Due process requires that a nonresident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id. (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State" such that it "should reasonably anticipate being haled into court there." Id. (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and  World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 559). Each assertion of personal jurisdiction is tested on a case-by-case basis. Id. (citing Orangeburg Pecan Co. v. Farmers Inv. Co., 869 F. Supp. 351, 357 (D.S.C. 1994)).

As noted, due process requires that a nonresident defendant have certain minimum contacts with the forum before personal jurisdiction can be exercised. Essentially, the minimum contacts test requires that the defendant purposely avail himself of the benefits and protections of the forum's laws. Kulko v. Superior Court, 436 U.S. 84  (1978).

In Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), the United States Supreme Court explained  that the purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or third person. What is sought is conduct by the defendant in relation to the forum state such that he should reasonably anticipate being haled into court there. Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)).

9

In this case, Doug Cherry, an alleged employee of Aon Corp., offered his company's services to the plaintiff in the State of South Carolina. While Aon Corp. asserts that Mr. Cherry was not its employee, this Court is required to construe all of the relevant pleadings and allegations in the light most favorable to the plaintiff, assume the Gray affidavit to be credible, and draw the most favorable inferences for the exercise of jurisdiction.

The record further reflects that Mr. Cherry visited the plaintiff's South Carolina offices on multiple occasions for business purposes. Aon Corp., by and through Tom Appling, also allegedly represented to the plaintiff that it would monitor the financial soundness of the insurance companies it recommended to the plaintiff.

In the light most favorable to the plaintiff, Aon Corp. purposefully availed itself of the privilege of conducting activities in this state. Therefore, sufficient minimum contacts by Aon Corp. with the state of South Carolina have been alleged by the plaintiff. When a defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities, then minimum contacts are more likely to be found. Burger King, 471 U.S. at 472.

Once a plaintiff makes the required showing that there have been sufficient minimum contacts with the forum state by the nonresident defendant, jurisdiction may still be defeated if its exercise would be unreasonable and contrary to concepts of fair play and substantial justice. Esab Groupo, Inc., 34 F. Supp.2d at 329 (citing Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir.), cert. denied, 515 U.S. 1122 (1995)). This reasonableness inquiry is a multi-factor balancing test that weighs any burden on the defendant against various countervailing considerations, including plaintiff's interest in obtaining relief and the forum state's interest in the controversy. Id. at 329-330

(citing <u>World-Wide Volkswagen</u>, 444 U.S. at 292). However, defeat of an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." <u>Id</u>. at 330. (citing <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558 (Fed. Cir.), <u>cert</u>. <u>dismissed</u>, 512 U.S. 1273 (1994)).

To determine whether an exercise of jurisdiction would comport with the due process standard, a number of factors must be considered, including: (1) the duration of the defendant's activity in this state; (2) the nature and circumstances of the defendant's acts; (3) inconvenience to the parties by either the exercise or refusal to exercise jurisdiction; and (4) the forum state's interest in exercising jurisdiction over the action. <u>QZO Inc. v. Moyer</u>, 358 S.C. 246, 594 S.E.2d 541 (Ct. App. 2004).

Based upon the undersigned's consideration of all relevant factors, the Court also concludes that the traditional notions of fair play and substantial justice would be met if jurisdiction was exercised in this case. In particular, the factors discussed below support this Court's exercise of jurisdiction in this case.

First, the plaintiff alleges that the activities complained of spanned the years 1997-2002. (Complaint ¶ 6). Clearly, the acts complained of occurred over a significant period of time. Due to the significant duration of Aon Corp.'s alleged actions, the undersigned concludes that it would not be unreasonable and contrary to concepts of fair play and substantial justice if this Court were to exercise jurisdiction.

Second, as noted above, the nature and circumstances surrounding Aon Corp.'s alleged actions support the conclusion that Aon Corp. purposefully availed itself of the privilege of conducting activities in the state of South Carolina. The evidence in the record also supports the plaintiff's position that Aon Corp. should have expected that its alleged activities could result in it being subject to jurisdiction in this District. Again, Doug Cherry, an alleged employee of Aon Corp., allegedly offered his company's services to the plaintiff in the State of South Carolina. As well, Mr. Cherry visited the plaintiff's South Carolina offices on multiple occasions for business purposes. Accepting these allegations as true, as is legally required, the nature and circumstances of Aon Corp.'s acts also favors the exercise of jurisdiction in this case.

Third, Aon Corp. has not shown that it would be substantially inconvenienced in the event that jurisdiction of the instant case was exercised by this Court. To the contrary, a number of witnesses and relevant documents are likely to be present in this state and in all likelihood discovery will be conducted here. Therefore, requiring the parties to ultimately try this case in South Carolina would not appear unduly burdensome.

Fourth, considering that a substantial number of witnesses are present in the state of South Carolina and that the actions and harm complained of allegedly occurred in South Carolina, the undersigned concludes that this Court would have a substantial interest in exercising jurisdiction over this action.

In sum, personal jurisdiction as to Aon Corp. exists in this case. Specifically, the South Carolina long-arm statute establishes personal jurisdiction over Aon Corp. Similarly, the assertion of personal jurisdiction by this Court over Aon Corp. complies with the standards of due process. Thus, Aon Corp.'s motion to dismiss is denied.

12

## II. Aon Corp.'s Motion to Quash Service of the Plaintiff's Summons and Complaint

Next, Aon Corp. has also moved to quash service of the plaintiff's summons and complaint upon them, because Aon Corp. did not allegedly conduct any business in the state of South Carolina. The parties agree that service of the summons and complaint was accomplished upon the Secretary of State pursuant to S.C. Code Ann § 15-9-245. However, Aon Corp. contends that service upon the Secretary of State was not authorized by this statute, since it did not conduct any business in South Carolina. The plaintiff disagrees.

S.C. Code Ann § 15-9-245 expressly provides that:

(a) Every foreign business or nonprofit corporation which is not authorized to do business in this State, by doing in this State, either itself or through an agent, any business, including any business activity for which authority need not be obtained as provided by Section 33-15-101, is considered to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State out of or in connection with the doing of any business in this State.

Thus, service upon the Secretary of State is appropriate when a company does business, either itself or through an agent, within the state of South Carolina.

In this case, the plaintiff alleges that Aon Corp., by and through its agents aor employees, has done business in South Carolina. Therefore, the Court concludes that the plaintiff had a basis to rely upon S.C. Code Ann § 15-9-245 when it perfected service upon the Secretary of State. For this reason, Aon Corp.'s motion to dismiss on this basis is denied.

## III. Aon Risk's Motion to Dismiss for Failure to State a Claim

### A. Statute of Limitations

Aon Risk next contends that the instant action is time-barred in its entirety and should be dismissed for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the

13

Federal Rules of Civil Procedure. Specifically, Aon Risk asserts that:_____

_____Plaintiff clearly knew or should have known that it had no expectation of coverage under its professional liability policy when Reliance was placed into rehabilitation on May 29, 2001. Thus, to the extent that plaintiff had any cause of action against Aon regarding the failure of Reliance, (which Aon expressly denies,) any and all such causes of action accrued on May 29, 2001. Because plaintiff's claims were filed outside the requisite three-year time period, all of the plaintiff's claims are untimely and must be dismissed.

(Aon Risk Memo. p. 7).

Conversely, the plaintiff argues that "Aon inaccurately asserts the statute of limitations started running May 29, 2001[,] when reliance was placed into rehabilitation." (Plaintiff Memo p. 5). According to the plaintiff, its causes of action did not accrue until after May 29, 2001.

As noted, Aon Risk has moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion to dismiss under Rule 12(b)(6), the allegations of a complaint are to be liberally construed in favor of the plaintiff. Conley v. Gibson, 355 U.S. 41 (1957); Chapin v. Knight-Ridder, Inc., 993 F.2d 1087 (4th Cir. 1993). A court should only grant a Rule 12(b)(6) motion where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle it to relief. Trulock v. Freeh, 275 F.3d 391 (4th Cir. 2001); DeBauche v. Trani, 191 F.3d 499 (4th Cir. 1999). Likewise, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling it to relief. Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999).

14

The burden of establishing the bar of the statute of limitations rests upon the one interposing it. Moore v. Smith, 29 S.C. 254, 7 S.E. 485 (1888). As well, where the testimony is conflicting upon the question, it becomes an issue for the jury to decide. Latimer v. Trowbridge, 52 S.C. 193, 29 S.E. 634 (1898).

In this case, the parties agree that a three-year statute of limitation applies. In determining when a cause of action arises the "discovery rule" is applied. Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div., 319 S.C. 556, 462 S.E.2d 858 (1995). According to the "discovery rule," the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. Hedgepath v. American Tel. & Tel. Co., 348 S.C. 340, 559 S.E.2d 327 (Ct. App. 2001). Under the "discovery rule," a cause of action accrues for purposes of the statute of limitations when a plaintiff has notice that he might have a remedy for a harm. Dean v. Ruscon Corp., 321 S.C. 360, 468 S.E.2d 645 (1996). The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. Hedgepath, 348 S.C. at 355-56. In explaining the discovery rule, the South Carolina Supreme Court has stated that:

> We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

> Dean v. Ruscon Corp., 321 S.C. at 363-64.

The date on which discovery of the cause of action should have been made is an objective question, rather than a subjective one. Hedgepath, 348 S.C. at 356. In other words, whether the particular plaintiff actually knew he had a claim is not the test. Young v. S.C. Dept. of Corrections,

15

333 S.C. 714, 511 S.E.2d 413 (Ct. App. 1999). Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. Id.

A review of the plaintiff's complaint reflects that on or about May 29, 2001, upon a petition filed by the Insurance Commissioner of the Commonwealth of Pennsylvania, Reliance Insurance Company was placed into "rehabilitation." (Complaint ¶ 15).[1] Subsequently, on or about October 3, 2001, the rehabilitation of Reliance was terminated, Reliance was declared insolvent, and an Order of Liquidation was entered by the Commonwealth Court of Pennsylvania. (Complaint ¶ 16). These factual allegations were not seriously disputed by Aon Risk at the hearing held in this matter.

Based upon the undersigned's review of these pleadings, accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, the Court cannot conclude that Aon Risk has met its burden of establishing that the bar of the statute of limitations should be applied in this case.

As persuasively argued by the plaintiff, although it may well have been on notice by May 29, 2001, that Reliance's financial status was less than stellar, no reasonable basis existed upon which it could be definitively concluded that Reliance would not pay on any existing claims at that time. Again, the actual effect of being placed into "rehabilitation" is not defined in the record and the parties have neither briefed this issue or provided this Court with controlling case law in this regard. Arguably, it was not until October 3, 2001, the date Reliance was declared insolvent, that the plaintiff knew or should have known that a cause of action against Aon Risk had accrued. As a result, it is reasonable to conclude that the plaintiff had until October 3, 2004, to commence the

---

[1]The complaint does not define "rehabilitation."

16

instant action. Because this case was commenced in state court on July 21, 2004, the Court concludes that this case is not barred by the three-year statute of limitations. Accordingly, Aon Risk's motion to dismiss based upon the statute of limitations is denied.

### B. Duty to Monitor the Financial Condition of an Insurer

Next, Aon Risk contends that the plaintiff's complaint in this case should be dismissed because the law does not impose any duty upon Aon Risk to continually monitor the financial condition of insurers. Again, accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, the Court cannot conclude that the plaintiff fails to state a claim for which relief can be granted.

As alleged by the plaintiff, the defendants had a fiduciary and professional relationship with it. (Complaint ¶ 22). According to the plaintiff, the defendants breached their duties in one or more of the following acts and omissions: (1) failing to adequately investigate Reliance and ascertain its true financial condition; (2) failing to investigate and discover that Reliance had a significant risk of failure; (3) recommending Reliance as an insurance provider, despite its inadequate investigation of Reliance; (4) obtaining insurance from Reliance for plaintiff, despite its inadequate investigation of Reliance; (5) failing to adequately warn plaintiff that Reliance's financial condition was deteriorating rapidly and that plaintiff should immediately take steps to transfer its professional liability coverage to another provider; (6) failing to find substitute professional liability coverage for the plaintiff; (7) failing to disclose to the plaintiff the defendants business relationships with Reliance that resulted in the defendants placing its interest above plaintiff; and (8) other acts and omissions not yet known to the plaintiff (Complaint ¶ 26, 34). Plaintiff's complaint also alleges that the defendants affirmatively represented to the plaintiff that they would investigate and monitor on an

ongoing basis the financial condition of the professional liability insurers procured on plaintiff's behalf and that it would notify plaintiff about any adverse changes in the insurers financial capacity. (Complaint ¶ 9).

Accepting the aforesaid allegations as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, the Court cannot conclude that the plaintiff cannot prove any set of facts which entitle it to relief for breach of a fiduciary duty. Plaintiff's complaint sufficiently states a claim for which relief can be granted.

According to Aon Risk, it had no duty to guarantee the solvency of Reliance. In support thereof, Aon Risk cites Higgenbotham & Assocs., Inc. v. Greer, 738 S.W.2d 45 (Tx. Ct. App. 1987) for the legal proposition that "as long [as] an insurer is solvent at the time coverage is placed, the broker is not liable in the event of its subsequent insolvency." However, Aon's reliance upon Higgenbotham is not sufficiently persuasive.

First, Higgenbotham is factually distinguishable from the case at bar. In Higgenbotham, the insured purchased a bowling center and had it insured by a multi-peril insurance policy. The policy was procured by Higgenbotham & Associates, Inc., an independent insurance agent. Subsequently, the center was destroyed by fire, a claim was submitted by the insured, and the insurance company issued a check for payment of the loss. The check was deposited but returned unpaid because the insurance company had become insolvent. Thereafter, the insured brought suit against the insurance agent for negligence in procurement of the policy and misrepresentation under the Texas Deceptive Trade Practices Act. Following a jury trial, judgment was entered in favor of the insured and the agent appealed.

18

On appeal, the Texas Court of Appeals reversed, holding that an insurance agent is not liable for an insured's lost claim due to insurer's insolvency if insurer is solvent at time policy is procured, unless at that time or at later time when insured could be protected, the agent knows or by exercise of reasonable diligence should know, of facts or circumstances which would put a reasonable agent on notice that the insurance policy presents unreasonable risk. The Texas Court of Appeals further explained that:

> The general rule is that an insurance agent or broker is not a guarantor of the financial condition or solvency of the company from which he obtains the insurance. He is required, however, to use reasonable skill and judgment with a view to the security or indemnity for which the insurance is sought, and a failure in that respect may render him liable to the insured for resulting losses. Thus, where a policy is procured in a company known by the agent to be insolvent, the agent is liable for a loss suffered by reason of such insolvency. On the other hand, where the company was solvent when the policy was procured, its subsequent insolvency generally does not impose liability on the agent or broker. 3 Couch on Insurance 2d § 25:48 (rev.1984); 43 Am. Jur.2d Insurance § 143 (1982); Annot., 29 A.L.R.2d 171, 182 (1953).

> Higgenbotham, 738 S.W.2d at 47-48.

Significantly, in reaching its decision, the Texas Court of Appeals concluded that there was "no evidence" of the insurance agent's alleged negligence upon which a favorable jury verdict could have been entered. Id., 738 S.W.2d at 47.

Conversely, while the Higginbotham court was presented with "no evidence" of the insurance agent's alleged negligence, accepting the plaintiff's allegations in the complaint in this case as true, as is legally required, the undersigned concludes that sufficient allegations of a breach of a fiduciary duty on the part of the defendants have been alleged upon which relief could be granted.

As noted above, according to the plaintiff, the defendants breached their duties in one or more of the following acts and omissions: (1) failing to adequately investigate Reliance and ascertain its true financial condition; (2) failing to investigate and discover that Reliance had a significant risk of failure; (3) recommending Reliance as an insurance provider, despite its inadequate investigation of Reliance; (4) obtaining insurance from Reliance for plaintiff, despite its inadequate investigation of Reliance; (5) failing to adequately warn plaintiff that Reliance's financial condition was deteriorating rapidly and that plaintiff should immediately take steps to transfer its professional liability coverage to another provider; (6) failing to find substitute professional liability coverage for the plaintiff; (7) failing to disclose to the plaintiff the defendants business relationships with Reliance that resulted in the defendants placing its interest above plaintiff; and (8) other acts and omissions not yet known to the plaintiff (Complaint ¶ 26, 34). Notably, plaintiff's complaint also alleges that the defendants affirmatively represented to the plaintiff that they would investigate and monitor on an ongoing basis the financial condition of the professional liability insurers procured on plaintiff's behalf and that it would notify plaintiff about any adverse changes in the insurers financial capacity. (Complaint ¶ 9).

Again, accepting the aforesaid allegations as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, the Court cannot conclude that the plaintiff's complaint fails to state a claim for which relief can be granted. Therefore, Aon Risk's motion to dismiss for failure to state a claim for which relief can be granted is denied.

Second, Higgenbotham is not legally controlling in either the Fourth Circuit or the State of South Carolina. Simply stated, Higginbotham was decided by the Texas Court of Appeals and is not binding precedent in the instant case. Again, Higginbotham is distinguishable from the instant case.

20

Third, the plaintiff persuasively argues that Aon Risk's characterization of its claims are inaccurate. According to the plaintiff, it is not attempting to assert a cause of action for breach of a duty to guarantee the solvency of Reliance. Instead, the plaintiff argues that it is merely attempting to state a cause of action for breach of a fiduciary duty. (Plaintiff Memo. p. 7). A review of the plaintiff's complaint reflects that a breach of a fiduciary duty has clearly been pled.

In this regard, the South Carolina courts have long recognized the general rule that insurance agents and brokers are required to exercise due care in placing insurance and would be personally liable for the neglect of that duty. Riddle-Duckworth v. Sullivan, 253 S.C. 411, 171 S.E.2d 486 (1969); La Tourette v. McMaster, 104 S.C. 501, 89 S.E. 398 (1916); and Hinds v. United Insurance Company of America, 248 S.C. 285, 149 S.E.2d 771 (1966). As explained by the South Carolina Supreme Court in Riddle-Duckworth, Inc., supra,

> ...where an insurance agent or broker, with a view toward being compensated, undertakes to procure insurance for a member of the public, the law holds the agent or broker to the exercise of good faith, and reasonable skill, care and diligence in performing the obligation. If the agent or broker fails, because of his fault or neglect, to procure the insurance, or does not follow instructions, or if the policy is void or materially deficient, or does not provide the coverage he undertook to supply, he is liable to his principal for the loss sustained thereby in the amount that would have been due under the insurance policy if it had been obtained and provided the desired coverage.

> Riddle-Duckworth v. Sullivan, 253 S.C. at 422.

Furthermore, a number of South Carolina Supreme Court decisions have recognized the duty owed by an insurer and its agents to an applicant to avoid representations which would mislead the applicant to his detriment, and at the same time handle the application with care and without unreasonable delay. See Ward v. Liberty Life Ins. Co., 232 S.C. 582, 103 S.E.2d 48 (1958); Keller v. Provident Life and Accident Ins. Co., 213 S.C. 339, 49 S.E.2d 577 (1948). In Keller, the South

Carolina Supreme Court further noted that:

> Upon the filing of an application, it is the duty of the insurer to act upon it with reasonable promptness and, in the meantime, to refrain from doing anything reasonably calculated to mislead the applicant.

> Keller, 49 S.E.2d at 583.

Again, accepting the allegations of the plaintiff's complaint as true, as is legally required, the undersigned cannot conclude that the complaint fails to state a claim for which relief can be granted. Therefore, Aon Risk's motion to dismiss is denied on this basis.

### C. Exclusive Role of the South Carolina Insurance Commissioner

Moreover, Aon Risk argues that plaintiff's complaint should also be dismissed, since Aon allegedly "had no duty to plaintiff regarding the solvency of Reliance because the South Carolina Insurance Commissioner exclusively discharges that function pursuant to statute." The undersigned is not persuaded in this regard.

In particular, as noted above, the plaintiff has clearly alleged that defendant Aon Corp. breached its fiduciary duty to the plaintiff in numerous respects. Meanwhile, the undersigned is unaware of, and has not been provided with, any controlling case or statutory law which preempts such claims. In this regard, Aon Risk's reliance upon Wilson v. All Service Ins. Corp., 153 Cal. Rptr. 1221 (Ct. App. 1979) is not sufficiently persuasive. While the California Court of Appeals in Wilson may have concluded that an insurance broker owes no duty to its clients to investigate the financial condition of an insurer conducting business in the State of California, this decision, although persuasive, is not controlling within the Fourth Circuit. Additionally, Wilson is factually distinguishable from the instant case, since: (1) it interpreted only California insurance law; and (2) did not involve the affirmative representations/misrepresentations which are alleged in this case.

In   sum, Aon Risk has not sufficiently met its burden upon which it can be definitively concluded that it had no duty to the plaintiff. Therefore, Aon Risk's motion to dismiss is denied on this basis.

### D.  Civil Conspiracy

Next, Aon Risk contends the plaintiff's allegations of civil conspiracy fail to state a claim for which relief can be granted.  In particular, Aon Risk alleges that the plaintiff's civil conspiracy claim must be dismissed, since it does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy.  As well, Aon Risk argues that:

> Plaintiff's civil conspiracy claim is defective because the complaint does not allege that the plaintiff suffered any damages in addition to, or different from, those resulting from the actions of Aon individually.

(Aon Risk Memo. p. 16).

In support thereof, Aon Risk relies upon the South Carolina Supreme Court's decision in Todd v. South Carolina Farm Bureau Mut. Ins. Co., 176 S.C. 284. 278 S.E.2d 607 (1981)  (holding that where a claim for civil conspiracy does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy, it should be dismissed).

In South Carolina, a cause of action for civil conspiracy is defined as "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." Vaught v. Waites, 300 S.C. 201, 387 S.E.2d 91, 95 (Ct. App. 1989) (citing Lee v. Chesterfield Gen. Hosp. Inc., 289 S.C. 6, 344 S.E.2d 379 (Ct. App. 1986)). Special damages are defined as "[d]amages for losses that are the natural and proximate, but not the necessary, result of the injury..." Sheek v. Lee, 289 S.C. 327, 345 S.E.2d 496, 497 (1986). Special damages must be alleged in the complaint to avoid surprise to the other party. Id.

23

Accepting the plaintiff's allegations in its complaint, as is legally required, the undersigned concludes that the plaintiff's claims for civil conspiracy has been sufficiently pled. In particular, a review of the plaintiff's complaint reveals the following allegations:

77.     Plaintiff restates and incorporates by reference the allegations set forth above in paragraphs 1 through 76.

78.     Defendants and Reliance wrongfully acted in combination with each other for the purpose of inducing plaintiff to purchase and maintain professional liability coverage.

79.     That as a direct and proximate result of this conspiracy between defendants and Reliance, plaintiff has been damaged.

79.     That as a direct and proximate result of this conspiracy between defendants and Reliance, plaintiff has been damaged.

(Complaint ¶'s 77-79).

Under federal notice pleading standards, the plaintiff "is only required to meet the requirements of Rule 8(a) [of the Federal Rules of Civil Procedure] and put [Aon Risk] on notice of the claim" for civil conspiracy. James v. Pratt and Whitney, 126 Fed.Appx.607, 614 (4th Cir. 2005). Clearly, the plaintiff has sufficiently met that standard here. Therefore, Aon Risk's motion to dismiss the plaintiff's claim for civil conspiracy due to an alleged failure to state a claim for which relief can be granted is denied.

Additionally, the undersigned's conclusion to deny Aon Risk's motion to dismiss the plaintiff's claim for civil conspiracy is supported by the Fourth Circuit Court of Appeals recent decision in James v. Pratt and Whitney, supra. In James, a union aircraft mechanic brought an action in state court against his employer and aircraft engine manufacturer asserting claims of civil conspiracy, intentional interference with contractual relations, and intentional infliction of emotional

24

distress. The action was then removed to Federal Court on diversity grounds. After removal, the

District Judge granted the defendant's motion for summary judgment and dismissed the mechanic's

claims. The mechanic appealed. On appeal, the Fourth Circuit affirmed, in part, and reversed. In so

doing, the Fourth Circuit held, in part, that: (1) the mechanic stated additional and independent acts

in furtherance of conspiracy; and (2) the mechanic stated that he suffered special damages. The

Fourth Circuit further reasoned that:

> The language of the civil conspiracy cause of action likewise contains independent allegations of a civil conspiracy that are not identical to the language contained in the other causes of action. J.A. 12-14. Specifically, in the civil conspiracy cause of action, the complaint incorporates James's earlier allegations and then alleges "[t]hat the Defendant conspired and acted to harm the Plaintiff in retaliation for the Plaintiff's refusal to falsify maintenance records concerning the C-17 Globemaster." J.A. 12. Thus, James here did assert independent allegations in furtherance of a civil conspiracy.
>
> Further, an analysis of the damages claimed in the complaint indicates that appellant complied with South Carolina law. In the first cause of action for civil conspiracy, appellant sets forth in paragraph 48 of the complaint the following named items of damages: 1) suffered lost wages; 2) suffered lost benefits; 3) suffered consequential economic damages; 4) suffered severe emotional distress; and 5) suffered injury to his reputation as a mechanic and union member in a leadership position. J.A. 12. Thus, special damages as alleged in this case appear to be a "loss of money or other material temporal advantage capable of being assessed a monetary value." Phoenix Furniture Co., 339 F. Supp. at 971.
>
> Under federal notice pleading standards, James is only required to meet the requirements of Rule 8(a) and put Pratt & Whitney on notice of the claim. Obviously, James met that standard here.

Likewise, the plaintiff in this case has sufficiently placed Aon Risk on notice of its claim for civil

conspiracy.

25

With respect to "special damages," the plaintiff alleges further that:

18.    ...plaintiff was left without professional liability coverage for a claim in question and was forced to cover a substantial portion of the loss, exceeding $1.0 million, with its own funds.

(Complaint ¶ 18).

At this stage of the proceedings, the undersigned concludes that this allegation, coupled with the plaintiffs other allegations alleging civil conspiracy, are sufficient to preclude dismissal for failure to allege special damages at this stage. Again, under federal notice pleading standards, the plaintiff is only required to meet the requirements of Rule 8(a) and put Aon on notice of the civil conspiracy claim. Therefore, Aon Risk's motion to dismiss the plaintiff's claims for civil conspiracy is also denied.

### E.  Unfair Trade Practices

Furthermore, accepting as true the plaintiff's allegations in its complaint, as is legally required, the undersigned concludes that the plaintiff's claims for unfair trade practices has also been sufficiently pled. In particular, in order to maintain a private cause of action under the South Carolina Unfair Trade Practices Act ("SCUTPA"), a plaintiff must establish: (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest. Bessinger v. Food Lion, Inc., 305 F. Supp.2d 574 (D.S.C. 2003) (citing Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283 (4th Cir. 1998) and Daisy Outdoor Advertising Co. v. Abbott, 322 S.C. 489, 473 S.E.2d 47 (1996)). A review of the plaintiff's complaint reveals that each of these necessary elements has been sufficiently pled in this case.

26

As the record reflects, the plaintiff alleges the following in its complaint:

71.    Defendants' actions, inactions, misrepresentations and omissions of material fact had the capacity to deceive plaintiffs.

72.    Defendants' actions, inactions, misrepresentations and omissions of material fact are capable of repetition and otherwise affect the public interest of this State.

73.    Defendants have therefore violated the South Carolina Unfair Trade Practices Act.

74.    Defendants violation of the South Carolina Unfair Trade Practices Act was willful.

75.    Plaintiffs [sic] are therefore entitled to recover actual and treble damages, costs, and attorney's fees.

(Complaint ¶'s 71-75).

Accepting as true the plaintiff's allegations in its complaint, as is legally required, the undersigned concludes that the plaintiff's claims for unfair trade practices has been sufficiently pled.

Additionally, the undersigned notes that Aon Risk also moves for dismissal of the plaintiff's unfair trade practices claim, since SCUTPA explicitly excludes from its scope unfair and deceptive trade practices "related to" the business of insurance (Aon Risk Memo. p. 18-19). However, the undersigned also concludes that it would be inappropriate to decide, without any factual development, the issue of whether plaintiff's allegation "relate to" the business of insurance. Accepting the plaintiff's allegations in its complaint as true, a claim for unfair trade practices has been sufficiently pled.

### IV.  Aon Risk's Motion to Dismiss the Plaintiff's Allegations of Fraud due to an Alleged Failure to Plead with Particularity

Finally, Aon Risk argues that the plaintiff's complaint is legally deficient, since:

Plaintiff's fraud allegations lack...particularity. Among other things, the allegations fail to provide the time, place, contents, method of communication, or the communicator of the alleged false representations.

(Aon Risk Memo. p. 14).

The undersigned disagrees.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In construing Rule 9(b), the "circumstances" required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). However, balanced against this particularity requirement is the notice pleading requirement of Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing the pleader is entitled to relief." Kerby v. Mortgage Funding Corp. 992 F. Supp. 787 (D.Md.1998). Failure to comply with the pleading requirements of Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). Harrison, 176 F.3d at 783.

As the record reflects, the plaintiff alleges the following in his complaint:

8.      Commencing with its initial appointment as insurance broker for plaintiff, Aon represented to plaintiff that it possessed specialized expertise in the area of professional liability coverage. Aon further represented that it possessed specialized knowledge and expertise to monitor the financial condition of professional liability insurers.

9.    In factAon represented to plaintiff that it employed a unique division within the entity whose sole purpose was to monitor the financial condition of the professional liability insurers procured on plaintiff's behalf and that it would notify plaintiff about any adverse changes in the insurer's financial capacity.

10.    Aon further represented to plaintiff that it would employ its expertise and advice not only to notify plaintiff of any adverse changes in the financial condition of any applicable insurer, but also to provide professional advice concerning the continuing relationship with such insurer, and that it would provide suitable replacement coverage for plaintiff.

•••

12.    Aon repeatedly assured plaintiff of Reliance's continued viability and reiterated its commitment to Reliance in advising plaintiff not to transfer its professional liability coverage to another provider.

•••

49.    Aon made numerous representations to plaintiff regarding its expertise to provide insurance brokerage services, including, but not limited to the following: (1) representations to the plaintiff that Reliance was in sound financial condition and able to provide reliable insurance coverage for plaintiff and that the plaintiff was adequately protected from professional negligence claims by the professional liability insurance that plaintiff purchased from Reliance; (2) representations that it was a licensed, professional broker in South Carolina and that it was qualified to render independent advice, recommendations and other services in South Carolina; and (3) representations that it would independently provide services to plaintiff free of conflicts of interest.

50.    These representations were false;

51.    And the representations were material;

52.    Aon had knowledge of the falsity of the representations;

53.    Aon intended that the representations be acted upon by plaintiff;

54.    Plaintiff was ignorant of the falsity of the representations;

55.    Plaintiff reasonably relied upon the misrepresentations of Aon;

56.    Plaintiff was consequently and proximately injured by the misrepresentations of Aon.

57.    As a result of the fraudulent activities of Aon, plaintiff suffered substantial and reasonably foreseeable damages.

Accepting these allegations as true, as is legally required, the undersigned concludes that the plaintiff has sufficiently stated with particularity the necessary averments of fraud. In reaching this conclusion, the undersigned is cognizant that "Rule 9(b) was meant to require detailed pleadings in cases of fraud so as to aid a defendant in supporting its case. It was never meant to require a plaintiff to set forth every factual detail supporting its claim, nor was it meant to fuse the stages of pretrial investigation and discovery." U.S. v. NHC Healthcare Corp., 115 F. Supp.2d 1149 (W.D. Mo. 2000). Thus, Aon Risk's motion to dismiss the plaintiff's fraud cause of action for failure to state a claim for which relief can be granted is denied.

## **CONCLUSION**

For the reasons set forth herein, it is **ORDERED** that defendant Aon Corp's  motion to dismiss and to quash service of the summons and complaint is **DENIED**. As well, Aon Risk's motion to dismiss is also **DENIED** in its entirety.

**IT IS SO ORDERED.**


                                   s/ Terry L. Wooten
                                   Terry L. Wooten
                                   United States District Court Judge


August 23, 2005
Florence, South Carolina